MARY JORDAN, I. M. DEATON AND WIFE, MOLLIE, v. JAMES A.
SIMMONS.

(Filed 15 May, 1918.)

1. **Limitations of Actions—Deeds and Conveyances—Tax Deeds—Possession
—Evidence—Husband and Wife.**

> The right of action to recover lands under a tax deed is barred by the
> three-year statute of limitations; and where the evidence tends only to
> show that the wife was the purchaser and remained in possession with
> her husband, the owner, the latter of whom continued to exercise acts of
> owner, such possession does not, for its duration, suspend the operation
> of the statute or repel its bar to the wife's action brought after a delay
> of more than three years from her acquisition of the tax deed.

2. **Appeal and Error—Evidence—Unanswered Questions.**

> Where in answer to a question calling for the knowledge of the witness
> as to relevant facts at issue, the witness states he can only give the decla-
> rations of others, without further answering, the competency of such
> declarations are not before the Court on appeal.

CLARK, C. J., concurring.

APPEAL from *Cline, J.,* at September Term, 1917, of MONTGOMERY,
from a judgment of nonsuit. Appeal by plaintiffs.

*W. A. Cochran and R. T. Poole for plaintiffs.*
*Jerome & Scales for defendant.*

BROWN, J. This case was before this Court at a former term, and
is reported in 169 N. C., 140. That report is referred to for a state-
ment of the case.

The land in controversy was claimed by Allen Jordan, who was in
possession of it on 2 May, 1898, when it was sold for his taxes and bid
off by G. S. Beaman, who assigned his bid to Mary Jordan, the wife of
Allen Jordan. The sheriff's deed to Mary Jordan is dated 6 May, 1899.
This action was commenced on 6 May, 1903, by Mary Jordan and her
husband, Allen Jordan, to recover the land. They died pending the
action, and their heirs at law, I. M. Deaton and wife, Mollie O. Deaton,
have been made parties plaintiff, claiming the land under Mary Jordan.
It is claimed that Mary Jordan was not a party plaintiff when the
action was instituted, but became so in 1905. In our view, that is im-
material.

In our former opinion the statute is cited which enacts that no action
for the recovery of real property sold for the nonpayment of taxes shall
lie unless the same is brought within three years after the sheriff's deed
is made. It appears in the evidence offered by plaintiff and upon the
record that this action was not instituted until four years from date of

the sheriff's deed, and therefore it cannot be maintained unless there is something to take it out from the bar of the statute.

Plaintiff claims that after the land was sold, Mary Jordan entered into possession and has remained in possession until ousted, and therefore no action was necessary. There is no evidence that Mary Jordan ever was in possession of the land in her own right. The land belonged to her husband, Allen Jordan, so far as this record discloses, when sold for taxes. There is no evidence that Mary Jordan asserted any dominion over the land after she received the sheriff's deed other than she did prior thereto. There is no evidence that her husband yielded up possession to her, or that she committed any acts tending to prove that she had taken possession and was asserting her rights as owner. On the contrary, plaintiff's witness Russell testified that he and his father rented the land in 1899 and 1900 from Allen Jordan, and that the latter took out claim and delivery proceedings in his own name in 1900 for the rent.

Plaintiff's witness Howell testifies: "Well, about as far back as I remember, the land was being tended by old Colonel Jordan, and was in his possession up until, well, ever since he purchased it until Mr. Simmons got into law and got in possession."

We are unable to find any evidence in the record that prevents the bar of the statute.

The learned counsel for plaintiffs earnestly contends that the court erred in excluding the following question asked witness Saunders: "What acts of possession did Mrs. Jordan exercise over this land?"

This question was competent and relevant and should have been allowed, and we would grant a new trial but for the fact that, although it was excluded, the witness stated: "I know only what I have heard her and Colonel Jordan say."

Their declarations were not asked for and are not set out in record, and whether competent or not is a matter not before us.

Affirmed.

CLARK, J., concurring: The fact, however, should not pass without notice that though this action is for the recovery of land sold in May, 1898, for taxes in arrears for 1896, and was begun on 6 May, 1903, it is now here for decision in May, 1918, twenty years after the sale of the land, and the purchase whose validity is in question.

There is widespread complaint in this State, as well as elsewhere, at the congestion and delays in the courts. There has been no congestion at any time in this Court, but counsel recently stated in an argument here that on an average appeals did not get to this Court from his district under three and a half to four years after the suit was begun. It

may be safely said that the same average will apply doubtless to the whole State. Not infrequently appeals are heard here in cases which have been in the courts over ten years and sometimes even twenty years.

In *Taylor v. Gooch,* 110 N. C., 387, the action was brought in 1852 and the final appeal was heard at this Court in 1892, after a lapse of forty years. The cause of action originated in the purchase of land under a judgment obtained in 1806. Charles Dickens, in his description of the chancery suit of *Jarndyce v. Jarndyce* in "Bleak House" rendered an invaluable service to the legal profession and to the public by describing the evils and the infinite wrongs inflicted by needless delays in the courts.

In *Taylor v. Gooch* this Court said: "This is the fifth time this matter, which has been in litigation more than forty years, has been in this Court. The defendants and those under whom they claim have been in continuous and unbroken possession of the premises for ninety years. Eighty-nine years ago a decree was made in a cause pending between the parties under whom the plaintiff and defendants, respectively, claim, adjudging that those whose title and possession the defendants hold had paid in full for the premises, and adjudging that the plaintiff's ancestor execute title to the same."

In *Penny v. R. R.,* 161 N. C., 530, attention was called to the fact that that case had then been pending already fifteen years, and in that time four appeals had been taken to this Court, and for the fourth time a new trial had been granted. Surely this state of things should incline the bench and the bar to concede—and that without sensitiveness on the part of any one—that in the administration of justice there should be greater efficiency and a prompt determination in all matters coming before the courts. Such delays and the expense thereto add to the burdens of the loser and often deprive even him who gains the final judgment of all benefit therefrom.

Then, too, as in this case, papers are lost from the loose files which are kept, witnesses die, and the memory of those who survive is weakened so that too often, in addition to the great and unnecessary bill of costs and the loss of time and the expense entailed upon witnesses and suitors in attending court, justice may finally miscarry from the lack of evidence which once existed, or defective memories.

There is no evidence that the great delay in this case is any wise due to the judges of the Superior Court, nor does it clearly appear who is to blame, but there must be blame somewhere, for such long drawn out litigation and such inefficiency would not be permitted in any other business, and should not exist in the administration of justice.

Calling public attention to this matter will be the surest means in this as in all other matters to cure the evil. Congestion and other evils in

the administration of the courts are not matters which concern only lawyers and judges, but they are the concern of all litigants and of the taxpayers and of the public generally as well.

The American Bar Association and many State Bar Associations have passed resolutions and appointed committees to- secure a lessening of the delays in litigation, and they have urged that the judges should shorten their opinions, and the Legislature of this State has suggested that per curiam decisions should be used where no new principle of law is involved. Revisal, 1548. This however, would not lessen any congestion which exists in the Superior Court.

In that much misunderstood instrument, the Magna Carta of John (for there were several Magna Cartas), there was a promise that "justice should not be delayed" which was coupled with a provision that justice should not be sold, as if the two were similar evils so far as suitors were concerned. A far greater intelligence than that of the brutal barons and the contemptible king who met in conference at Runnymede has classed "the law's delay" among the greatest evils "that flesh is heir to." Shakespeare, Hamlet, Act 3, sec. 1.

One fruitful cause of delay is the abuse of legal process by taking an appeal which suspends the execution on the judgment without subsequently perfecting the appeal. One remedy for this is Rule 17, which allows the appellee to docket a certificate and dismiss the appeal if not brought up to the next term, but this in many instances involves a delay of 6 months. There is a much speedier method pointed out in *Avery v. Pritchard,* 93 N. C., 266, which holds that "the Superior Court may, upon proper notice, adjudge that the appeal has been abandoned, and proceed in the cause as if no appeal had been taken." This has been approved several times. See citations in Annotated Edition. This course can usually be taken at the very next term of the Superior Court, and even at chambers, when the statutory time has elapsed without serving the case on appeal or otherwise complying with the requirements for perfecting the appeal.

· This applies to the appeals in criminal as well as in civil cases. At this term an appeal in a criminal case was docketed and dismissed under Rule 17, in which the judgment was rendered two years ago, and thus the defendant obtained two years delay by simply taking an appeal and failing to perfect it. The execution of the judgment in that case should have been had at the next term of the Superior Court or at chambers, by applying to the judge, on notice to defendant, to adjudge the appeal abandoned under *Avery v. Pritchard,* 93 N. C., 266, or at the next term of this Court by moving to docket and dismiss under Rule 17, as has finally been done. Among many cases calling attention to this matter from time to time is the very recent case of *Lancaster v. Bland,* 168 N. C., 377.